**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD ACOSTA and JENNIFER** | ) | |
| **ROMAN, on behalf of themselves and** | ) | |
| **all others similarly situated,** | ) | |
| | ) | **No.  05 C 7068** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **TARGET CORPORATION,** | ) | |
| **TARGET NATIONAL BANK, and** | ) | **Magistrate Judge Geraldine Soat Brown** |
| **TARGET RECEIVABLES LLC** | ) | |
| **(f/k/a Target Receivables Corporation),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Plaintiff's Motion to Compel the Production of Documents Being Withheld Under a Claim of Privilege.  [Dkt 128.][1]  For the reasons set out below, the motion is granted in part and denied in part, and further relief is granted as set out herein.

---

[1]  The motion was filed when Richard Acosta was the only named plaintiff; subsequently, Bonnie Zuckerman and Jenifer Roman were added as named plaintiffs in the Amended Complaint. Ms. Zuckerman later voluntarily dismissed her claim.  [Dkt 170, 178.]

1

## BACKGROUND

The Amended Complaint

In their Amended Class Action Complaint, plaintiffs allege that Target (referring to Target Corporation and other related entities) violated various federal consumer protection laws, including the Truth in Lending Act, 15 U.S.C. § 1637 ("TILA"), breached their contracts and committed state law torts including fraud, in connection with Target's "Autosub" program. Plaintiffs allege that in the Autosub program, Target sent unsolicited Target VISA cards in the fall of 2004 and 2005 to persons who were then Target Guest Card [credit card] holders. (Am. Compl. ¶ 11.) The Guest Card and VISA card had separate credit card agreements. (*Id*. ¶ 28.) Plaintiffs Acosta and Roman activated the Target VISA and each had a new line of credit. (*Id*. ¶ 19.) They allege that they would not have activated the Target VISA if they had known doing so would close their Target Guest Card or if they knew that the Target VISA had stricter underwriting guidelines. (*Id*. ¶ 21.) The Target VISA had higher interest rates, higher late fees, a shorter grace period, and other terms not as advantageous to the "credit needy" individuals to whom Target sent the unsolicited Target VISA cards. (*Id*. ¶¶ 23-26.) As a result, they allege, they incurred greater late fees than they would have under the Target Guest Card agreement. (*Id*. ¶ 24.) Also, after plaintiff Acosta missed one payment on the Target VISA, his credit limit was cut and reduced to nearly the same as the Guest Card credit limit. (*Id*. ¶ 27.)

In 2006, the program was modified and the name changed to "Auto-Product Change." (*Id*. ¶ 13.) In that program, the account holder received a pre-mailer allowing the account holder to opt-out of the change by a certain date. (*Id*.) After that date, the account holder's Target Guest Card balance was subject to the terms of the Target VISA whether or not the VISA was activated. (*Id*.)

2

> Plaintiffs seek to represent a class defined as:
>
> All persons who were mailed a "Target VISA" card by Target Corporation or Target National Bank without first requesting or applying for said card, including Target Guest Card accountholders who were sent a "Target VISA" without requesting a "Target VISA."

(*Id*. ¶ 37.) The class includes recipients of cards under both the Autosub and Auto-Product Change programs. Unless otherwise indicated, this opinion will use "Autosub" to refer to both programs.

The *Muro* case.

Overshadowing the motion is the fact that the same plaintiffs' and defendants' counsel engaged in years of litigation in another case about Target's Autosub program, *Muro v. Target Corp*., 580 F.3d 485 (7th Cir. 2009) (affirming summary judgment for defendant). Coincidentally, the same magistrate judge was assigned to that case as well. *Muro* was, however, a different fact situation. The plaintiff Christine Muro had closed her Target Guest Card before she received the solicitation for a Target VISA. She did not activate the VISA card or make any charges, and she did not incur any fees, so she had no claim under TILA. *Muro*, 580 F.3d at 488 n. 3, 494. Here, in contrast, plaintiffs allege, in essence, that they were already incurring late penalties on their Target Guest Card accounts when they were induced by Target through the Autosub program to transfer to VISA accounts in which they would (and did) incur higher penalties, not only on new purchases but also on their outstanding amounts for previous purchases. (Am. Compl. ¶¶ 22-23.)

The parties spent several years on discovery in the *Muro* case. This case was effectively on hold while the appeal in *Muro* was pending and until Target's motion to dismiss this case was denied. (*See* Mem. Opinion and Order, July 20, 2010.) [Dkt 106.] It is impossible to understand the

parties' arguments on the present motion without a review of what happened in *Muro* because many of the same documents are at issue here as were in *Muro*, and both sides start their arguments here where things left off in that case.

The discovery rulings in *Muro*

In response to plaintiff Muro's document requests, Target served a privilege log identifying 89 documents that had been withheld from production on claims of privilege. *See Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181 at *1 (N.D. Ill. Nov. 28, 2006) ("*Muro I*"). This court reviewed each of the 89 documents at issue *in camera* and determined that some might be privileged if Target submitted sufficient factual material to support its claim of privilege, while others appeared to be nothing more than business advice. *Id*. at *3-6. Although the information Target submitted to the court, consisting of its privilege log and a letter, was insufficient to demonstrate a factual basis for privilege, the court allowed Target "one more opportunity to demonstrate the privileged nature of the communications . . . ." *Id*. at *6.

In response to the court's order, Target withdrew its claim of privilege as to some of the documents. *Muro v. Target Corp*, 243 F.R.D. 301, 304 nn. 2-3 (N.D. Ill. 2007) (*overruled in part*) ("*Muro II*"). The court determined that a few documents were plainly not privileged, and the dispute came down to 75 chains of e-mail communications among Target employees. *Id*. at 304 nn. 2-3. To fill the deficiencies noted in *Muro I*, Target provided one additional piece of information: the job title of the author and recipients of the last e-mail in the chain. *Id*. at 304. Target did not submit an affidavit explaining the significance of the job titles. *Id*. Target declined the court's offer of an opportunity to file a response to the plaintiff's motion, opting to rest on the revised privilege log it

4

had submitted. *Id*. at 304-05.

This court concluded that Target had failed to carry its burden of demonstrating that the communications were privileged. *Id*. at 306. As a threshold matter, Target had failed to disclose on its privilege log each of the communications that it was withholding on a claim of privilege. *Id*. The *in camera* review also showed that Target was withholding communications that were solely business without disclosing on its privilege log that it was withholding them, simply because at some point the business message got linked in a chain with a communication to a lawyer. *Id*. at 307. Without the proper disclosure, the plaintiff would have no reason or ability to challenge the privilege assertion. *Id*.

Most importantly, Target failed to provide the factual material to support its claim that the allegedly privileged material had been communicated only to those employees whose roles and tasks brought them within the scope of privilege. *Id*. at 308-09. Some e-mails had only unidentified distribution lists. *Id*. at 308. As to those e-mails that had specific individual recipients, all Target provided to the court was the job title, not any factual information about the identity or function of the individuals. *Id*. Target provided no information on which the court could base a decision that a particular recipient was within the scope of persons who could maintain the privilege. *Id*. After giving Target three opportunities to provide facts to support its privilege claims, and in light of Target's statement to the court that it would not provide any more information, this court concluded that Target had failed to carry its burden of demonstrating privilege, and ordered the documents produced. *Id*. at 310-11.

Target's appeal of that order was decided by the district judge along with the parties' motions for summary judgment and Muro's motion for class certification. *Muro v. Target Corp*, 250 F.R.D.

5

350 (N.D. Ill. 2007) ("*Muro III*"). The district judge granted summary judgment to Target on the

TILA claim, denied Muro's motion for reconsideration of summary judgment for Target on another

claim, and denied Muro's motion for class certification. *Id*. at 355-58. The district judge then

addressed the parties' objections to various discovery rulings made by this court, overruling all of

the objections except certain objections Target made to *Muro II*. *Id.* at 358-366. It is the effect of

that part of *Muro III* which the parties dispute on the present motion.

Muro III did not resolve the present motion for a number of reasons. To start, in its

objections to the district judge, Target argued that this court had ruled Target had waived attorney-

client privilege. *See Muro III*, 250 F.R.D. at 361. The actual ruling of *Muro II* was that Target had

failed to sustain its burden of providing a factual basis to support its claim of privilege as to each of

the disputed documents. *Muro II*, 234 F.R.D. 310.[2] Target also focused on the threshold question

of how the disputed e-mails were listed in the privilege log rather than the fact that the scanty

description in the privilege log was all the information Target provided to sustain its claim of

privilege as to any of the documents. Although the district judge did not agree with this court about

how e-mails should be listed on a privilege log, the district judge did not reach a decision on the

main issue: whether Target had presented a factual basis to sustain privilege. Notwithstanding

Target's express refusal to submit additional material to this court to support its privilege claims, the

---

[2] Similarly, the *Muro III* opinion suggests that this court had ruled that e-mail sent to more than ten people could not be privileged and that documents could not be privileged unless marked for limited dissemination. (*See Muro III*, 250 F.R.D. at 364 - 365.) The issue before this court in *Muro II*, however, was whether Target had presented factual material to prove each required element of privilege. The fact the purportedly privileged e-mails had been disseminated to large numbers of persons without any express limitation on future dissemination was a piece of evidence before this court on the issue of whether Target had sustained its burden of showing one element of privilege: that the communications had been "made in confidence." *See U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

district judge vacated the order in *Muro II* to permit Target yet another (fourth) opportunity to revise its privilege log, and the district judge agreed to perform a further *in camera* inspection. *Muro III*, 250 F.3d at 365-66. Apparently, Target finally accepted the need to support its privilege claims with factual information because, when Target filed a revised privilege log, it also filed – for the first time – a declaration describing the roles of the employees and contractors whose names appeared on the log. [*Muro v. Target*, N.D. Ill. 04 C 6267, dkt 276.]

The district judge never inspected Target's disputed e-mails. After Muro accepted an offer of judgment on her individual claim, the parties jointly moved for entry of final judgment, which was granted. [*Id*, dkt 292, 293, 296]. On appeal, the Seventh Circuit did not reach, or even discuss, any of the discovery disputes. *See Muro,* 580 F.3d 485.

The upshot is that the order compelling production in *Muro II* was vacated, but there was no decision by the district judge or the Seventh Circuit about whether Target factually sustained its claim of privilege as to any disputed e-mail. As a result, none of the e-mail that was disputed in *Muro* was produced, and plaintiffs in this case continue to dispute Target's assertion of privilege for them.


The impact of the *Muro* decisions for this case.

Target argues that *Muro III* is "the law of the case." (Def.'s Mem. at 1-2.) [Dkt 140.] Target does not cite any authority for that proposition, and it is not correct. For one thing, this is not the same case as *Muro,* so the law of the case doctrine has no application. "The doctrine of law of the case limits relitigation of an issue at a subsequent stage of the *same* suit." *Payne v. Churchich*, 161 F.3d 1030, 1037 (7th Cir. 1998) (emphasis in original, footnote and citation omitted). Here, there

are different plaintiffs, different factual allegations and a different district judge. The coincidence of the same defendant, same opposing lawyers and the same assigned magistrate judge does not make this the same case as *Muro*. To the extent the Seventh Circuit decision in *Muro* establishes precedent, the lower courts as well as the parties are bound by that precedent, but the Seventh Circuit did not reach a decision on the discovery disputes. The law of the case doctrine applies only to issues that were decided, not those which might have been decided but were not. *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1032 (7th Cir. 1997). Because the decisions of district courts are not precedent and do not have *stare decisis* effect, the decision in *Muro III* is not binding on the district judge in this case. *See Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005).

Plaintiffs, on the other hand, argue that this court should simply re-issue the ruling in *Muro II.* (Pls.' Mot. at 1-2, 9.) Even if the district judge's decision in *Muro III* is not binding in this case, however, it deserves respectful consideration. As noted, Target submitted a revised privilege log and a declaration. Also, there have been a number of opinions and scholarly articles on the issue of asserting privilege with respect to e-mail since *Muro II* was issued in 2007. *See, e.g.*, Hon. John M. Facciola & Jonathan M. Redgrave, *Asserting and Challenging Privilege Claims in Modern Litigation: the Facciola-Redgrave Framework*, 4 Fed. Cts. L. Rev. 19 (2010) (hereinafter *"Facciola & Redgrave"*). Most importantly, *Muro III* did not resolve the central issue: has Target supported its claim of privilege as to each document? That decision must be made here in light of what has been submitted on this motion.

**DISCUSSION**

The issue on the motion is whether Target has properly claimed and proven attorney-client privilege or work-product protection for its e-mail communications. Claiming and proving are two separate requirements.

**Legal Standard**

I.     Claiming privilege or protection

Federal Rule of Civil Procedure 26(b)(5)(A) describes what a party must do to claim privilege or protection:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must:
> (I) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed  – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Traditionally, in this district that has been done by serving a privilege log listing each separate document being withheld and identifying for each the date, author, all recipients along with their capacities, the document's subject matter, purpose for production, and specific explanation of why the document is immune from discovery. *See Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). The separate listing of each document stems from the fact that "[t]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *U.S. v. Lawless*, 709 F. 2d 485, 487 (7th Cir. 1983)

(citation omitted).[3]

Satisfying the requirements of Rule 26(a)(5)(A) is particularly perplexing in the case of e-mail communications, especially within an organizational setting like a corporation. Courts are divided about even the basic question of whether it is sufficient to list an e-mail chain as a single entry or whether each individual e-mail within the chain must be identified. Some courts compare an e-mail chain to a single conversation and require only the most recent to be listed. *See, e.g., Contl. Cas. Co v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 517 n. 9 (E.D. Cal. 2010) (citing *Muro III* and stating that only the most recent e-mail must be listed). Other courts believe that a proper analysis of privilege requires more detail. *See, e.g., In re Vioxx Prods. Liability Litig.*, 501 F.Supp. 2d 789, 814 n. 33 (E.D. La. 2007) (stating that a party's assertion of privilege for an entire e-mail thread while describing only the last message is "inappropriate and unfair"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R. D. 669, 672-74 (D. Kan. 2005) (individual e-mail within a strand must be separately listed and analyzed); *Helm v. Alderwoods Group, Inc.*, No. C 08-01184 SI, 2010 WL 2951871 * 2 (N.D. Cal. July 27, 2010) (same).[4]

No matter how the e-mail is listed, the privilege log must meet the requirement of Rule 26:

---

[3] Some commentators argue that the document-by-document privilege log must be re-thought in the age of electronically stored information (ESI). *See* Facciola & Redgrave, 4 Fed. Cts. L. Rev. at 19. Those authors argue for a "new approach that is premised on counsel's cooperation supervised by early, careful, and rigorous judicial involvement." *Id.* They suggest that, by using the 2006 revisions to the Federal Rules of Civil Procedure, counsel may be able to agree on categories of "clearly privileged" and "clearly not privileged" ESI, so that the number of documents that require more detailed description and in camera review are minimized. *Id.* at 39-40.

[4] Judge Facciola and Mr. Redgrave recommend that the parties log the "last-in-time" e-mail in each string, provided that: a) each separate communication in the chain is at some point the "last in time" e-mail in a string; and b) the log notes that the e-mail communication is part of a string. If an embedded e-mail communication is not otherwise available, then it must separately be identified and logged. Facciola & Redgrave, 4 Fed. Cts. L. Rev. at 48-49.

it must describe the nature of the withheld material in a manner that, without revealing information

itself privilege or protected, will enable other parties – and the court – to assess the claim.  The party

asserting privilege must, *inter alia*, clearly identify every recipient of a withheld communication.

*See, e.g., In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 522 (N.D.

Ill. 1990) (overruling a claim of privilege where the privilege log disclosed only nine of the 33

persons to whom the document had been distributed, and stating that "the very fact that [the party]

did not provide counsel for plaintiffs and the court with an accurate distribution list provides

sufficient reason to require production"). If listing only the recipients of the last e-mail in a chain

fails to disclose everyone to whom an allegedly privilege communication has been sent, the listing

cannot be adequate.   Moreover, if the recipient(s) at an e-mail address cannot be adequately

identified, it is impossible to determine whether the privilege is properly asserted.  *Muro III*, 250

F.R.D. at 364.


II.    Proving privilege

Properly claiming privilege is just the first step.  A party asserting attorney-client privilege

has the burden of establishing all of its essential elements, which have been summarized as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in
> his capacity as such, (3) the communications relating to that purpose, (4) made in
> confidence (5) by the client, (6) are at his instance permanently protected (7) from
> disclosure by himself or by the legal adviser, (8) except the protection be waived.

*U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quotation omitted).[5]  The attorney-client

---

[5]  Although this case involves both federal and state law claims, under Federal Rule of
Evidence 501, the federal law of privilege applies. *Mem. Hosp. for McHenry Cty. v. Shadur*, 664
F.2d 1058, 1061 (7th Cir. 1981) (noting that federal law governs question of whether privilege is
recognized in cases where principal claim is federal).

privilege applies to corporations but "complications in the application of the privilege arise when the client is a corporation . . . ." *Upjohn*, 449 U.S. at 389-390. In *Upjohn*, the Court held that the privilege applied to communications: a) made by employees to counsel at the direction of corporate superiors; b) in order to secure legal advice; c) concerning matters within the scope of the employees' corporate duties; d) where the employees themselves were aware they were being questioned in order that the corporation could obtain legal advice; and e) the communications were kept confidential since the time they were made. *Id*. at 394-95.

The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion. "A business that gets marketing advice from a lawyer does not acquire a privilege in the bargain . . . ." *In re Matter of Feldberg,* 862 F.2d 622, 626 (7th Cir. 1988).

> The attorney-client privilege protects only communications related to the giving or seeking of legal advice; funneling other communications past an attorney will not make them privileged. Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged. However, documents communicating legal advice to non-legal personnel are within the attorney-client privilege, as well as documents reflecting discussions among executives of legal advice. Thus the mere fact that a document is sent to many non-legal and few legal personnel is not determinative of whether it is privileged. The principal consideration is the nature of the document: whether it primarily requests or gives legal or business advice.

*Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919 at *5 (N.D. Ill. June 19, 1987) (citations omitted). Thus, the privilege does not apply to an e-mail "blast" to a group of employees that may include an attorney, but where no request for legal advice is made and the input from the attorney is business-related and not primarily legal in nature.

Counsel's comments on, and revisions to, drafts of documents that are intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions

communicate legal advice and have been maintained confidential. *American Natl. Bank & Trust Co. of Chicago v. AXA Client Solutions, LLC*, No. 00 C 6786, 2002 WL 1058776 *2 (N.D. Ill. March 22, 2002).

Additionally, the proponent of the privilege has the burden of demonstrating not only that the original communication was made with the expectation of confidentiality, but also that the confidential nature of the communication was not compromised by disclosure to individuals outside the attorney-client relationship. "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *see also Jenkins v. Bartlett*, 487 F.3d 482, 490-91 (7th Cir. 2007) (stating that "ordinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney"). "Where, however, the confidentiality of a document is not maintained, the privilege is lost. Where the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication." *Baxter Travenol*, 1987 WL 12919 at *5. "While the 'control group' test for the attorney-client privilege in a corporate setting has been discredited, the scope of an individual's employment is nevertheless highly relevant to the question of maintenance of confidentiality." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 538 n. 8. (N.D. Ill 2000) (citations omitted).

"The burden is on the [party claiming privilege] to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this

confidential information protected from general disclosure." *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). In that case, the party claiming privilege made "no attempt whatsoever to protect these memoranda within the agency," admitted it did not know who had access to the documents, and allowed copies of the allegedly privileged documents to be circulated to area offices, filed and kept for future use. The court concluded that the party had "failed to demonstrate a fundamental prerequisite to assertion of the privilege: confidentiality both at the time of the communication and maintained since." *Id.*

The complications in analyzing the attorney-client privilege for a corporation have been multiplied by the advent of ESI. As one court observed:

> [T]he advent of e-mail . . . has made it so convenient to copy legal counsel on every communication that might be seen as having some legal significance at some time, regardless of whether it is ripe for legal analysis. . . . The benefit from this expanded use of lawyers, however, comes at a cost. This cost is in the form of differentiating between the lawyers' legal and business work when the attorney-client privilege is asserted for their communications within the corporate structure. The privilege is only designed to protect communications seeking and rendering legal services.

*In re Vioxx Prods. Liability Litig.*, 501 F.Supp. 2d at 798 (footnote omitted). The burden of proving all of the elements of privilege, however, remains the same.

> While this expanded role of legal counsel within corporations has increased the difficulty for judges in ruling on privilege claims, it has concurrently increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel. The burden of persuasion on all elements of claims privileges is exclusively the proponent's.

*Id*. at 799 (footnote omitted).

14

III.    Work-product protection

Target also claims several of the documents that is has withheld from production are protected attorney work-product. Claims of work-product protection are governed by Federal Rule of Civil Procedure 26(b)(3). The doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine exists to "shield[ ] materials that are prepared in anticipation of litigation from the opposing party . . . ." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767–68 (7th Cir.2006).

Target's assertions of privilege and work-product protection are analyzed in light of those standards.

**Analysis**

I.    The materials before the court

Because some of the documents at issue on the motion are ones that were at issue in *Muro*. the parties submitted a mix of materials prepared for *Muro* and for this case.

Target's Third *Muro* Privilege Log: As discussed above, after the district judge issued *Muro III* but before the final judgment was entered, Target prepared a third privilege log. Plaintiffs' counsel then prepared a comparison of Target's second and third privilege logs, which Target's counsel agreed at a hearing on the motion is accurate. (Decl. of David J. Piell., Ex. G to Ex. C.) [Dkt

15

134 pp. 73-149.] Although it lists 89 documents, apparently some have been produced.

Target's *Acosta* Redaction Log: Target also prepared a log to show 224 documents that it had produced in redacted format. Plaintiffs' counsel reproduced the log and added his commentary. (*Id*., Ex. D.) [Dkt 134 pp. 169-237.]

Target's *Acosta* Privilege Log: This reflects another 72 documents that Target withheld completely. (*Id*., Ex. E pp. 238-98.) Plaintiff's counsel reproduced the log and added commentary.

Target's Supplemental Redaction Log: Target also served a log regarding documents it had redacted in a subsequent production in May 2011. [Dkt 185, 186.] It lists 14 documents, but notes that all but two have been produced.

Factual information: As discussed above, after *Muro III*, Target finally submitted a declaration by an employee of Target, Susan Wolf describing the "Autosub Project Team" and the roles of various individuals who received or sent communications listed on the Third *Muro* Privilege Log. Target also submitted with the present motion a similar declaration by Ms. Wolf about the persons who are listed as having received or sent communications on the *Acosta* Privilege Log and *Acosta* Redaction Log. (*Id*., Ex. F.)

Disputed documents: Target delivered all of the documents at issue to the court for *in camera* inspection. Target did not organize the approximately 400 documents in any way to help streamline the court's review, either topically or chronologically. Target also did not indicate what redactions it had made on the documents it gave to the plaintiffs. Moreover, many of the documents submitted were full or partial duplicates of other documents, but were not identified as such. The court was therefore forced to spend considerable time combing through the documents to identify the duplicates as well as to compare similar or related documents that did not appear in any proximity

16

to each other.[6]

II.    The court's *in camera* review and conclusions

The court has reviewed *in camera* and ruled upon each of the approximately 400 disputed documents, including all of the *Muro* documents and all of the *Acosta* documents. Those individual rulings are reflected in a separate order.

The *in camera* review revealed a number of facts. First, notwithstanding a six-year history of court orders instructing Target that supporting a claim of privilege requires factual material, in many cases Target asserted privilege for documents as to which it has submitted no factual basis to demonstrate that the distribution of the allegedly privileged communications was restricted, as required to sustain the privilege. Target submitted two declarations by Susan Wolf identifying specific persons involved in the Autosub programs, presumably to show that the communications to those persons did not waive privilege because they concerned matters within the scope of the recipient employees' corporate duties. *See Upjohn*, 449 U.S. at 394. Yet, a substantial number of the documents were distributed to persons not included in either of Ms. Wolf's declarations. Because Ms. Wolf's declarations were submitted in response to court rulings criticizing Target for failing to provide information about the persons who received the claimed "confidential" documents, one can only conclude that Target did not include these persons in Ms. Wolf's declaration because Target could not explain why they were within the scope of privileged communications – or Target

_____

[6] It was plaintiffs' counsel who, in addition to providing the court with Target's redacted documents, numbered Target's documents for ease and clarity of reference.

could not be bothered to do so.[7]

We are not talking about one or two additional people, but in some instances a substantial number of additional names and in many other instances an unspecified distribution.  The situation is illustrated by the spreadsheet documents Target variously called  "project issue lists" or "project requirement logs," or similar titles.  Those are spreadsheets in which the Autosub project team apparently kept track of all of the tasks to be done in the course of the projects, ranging from designing a way to route calls to setting up deadlines for print production.  The spreadsheets were apparently updated from time to time as tasks were completed, and various versions and editions were circulated.  The various versions appear on the privilege log as individual documents. The purpose of the spreadsheets was clearly overwhelmingly business, but they routinely included a few entries from and for "legal," presumably listing tasks the legal department personnel were to do or steps the legal department recommended.  Target appears to have redacted every entry from or relating to "legal" on all of the spreadsheets.  It is questionable whether the entries can be considered to convey legal as opposed to business advice (and some are plainly not legal advice), but even assuming, *arguendo,* that some of the entries could be considered legal advice, Target has submitted no factual material to demonstrate that the allegedly privileged entries from or relating to "legal" were created and maintained as confidential legal advice.  In fact, Target has failed to show that the

_____

[7]  The *in camera* review revealed, for example, that virtually every e-mail in the *Muro* documents bore at the top the name "Melissa Stone," a person not listed in Ms. Wolf's affidavit. Rather than toss out Target's claim of privilege with respect to virtually all the documents, the court gave Target an opportunity to explain that circumstance.  (*See* Order, Jan. 6, 2012.)  [Dkt 190.] Target initially could not explain it.  (*See* Defs.' Mem. Supp. Mot. Extension Time.) [Dkt 192.] Later Target reported that Ms. Stone was employed by the predecessor to its counsel's current law firm from 2004-05 and had been involved in the *Muro* document production.  The court is not required to keep extending Target opportunities to do what Target should have done years ago.

distribution of the spreadsheets was limited in any way. Target lists the author of the spreadsheets as "unknown" and the recipients as "N/A," presumably meaning that Target has no idea who authored or received them. To the extent there is a factual record, it demonstrates that Target did *not* limit the distribution to those persons listed in Wolf's declarations. A number of the spreadsheets are accompanied by cover memos showing distribution to a substantial number of persons about whom Target has provided the court with no information. For example, of the 35 people on the distribution cover memo for Acosta #18, nine are not listed in Ms. Wolf's declaration.

By the time the present motion was brought and the documents submitted for *in camera* review, Target was fully aware that the spreadsheets received distribution to persons Ms. Wolf did not list and about whom Target presented no information. For example, although Target did not list any recipients for Acosta #18 (Target's entry listed recipients as "N/A"), plaintiffs' version of the privilege log listed all of the persons named in the cover distribution memo for that document, including the persons who had not been named in Ms. Wolf's declaration. Target had a more than generous opportunity to provide factual information about those persons but was either unable or chose not to do so.

Second, it appears that Target's counsel did no review to ensure that what it claimed as "legal advice" could even arguably be characterized as such. It appears that Target redacted every entry on every document that had the word "legal" or "law" associated with it, and every marking its in-house counsel Kristin Watnemo made on a document. For example, on Acosta #175 [ACOSTA Bates no. 23986] only three words appear: "Law/ Susan Smith." Target redacted those three words as "legal advice." On Acosta #69 [ACOSTA Bates no. 3707] Target redacted the words, "Terms–printing services need 1 ½ weeks to print." Neither Target's privilege log nor its memorandum in

19

opposition to the motion give any explanation why that would be "legal advice." Rather, Target's explanation of its assertion of privilege on its privilege log is a cut-and-paste formula stating that "handwritten legal advice" from Watnemo has been redacted.

The court has reviewed every redaction Target made, and made all reasonable conclusions from the context about the nature and purpose of the words redacted, but Target's claims of privilege are in many instances simply baseless. Perhaps the most dramatic illustration is Acosta #77 [Bates no. ACOSTA 3811], which Target entirely redacted. It consists entirely of a freehand drawing apparently by Watnemo, which is included as Appendix A to this opinion. Again, Target described this document as "legal advice" without providing any explanation as to why it might be so. The court concludes that Target's claim of privilege for that drawing is frivolous.

III.    Award of expenses under Federal Rule of Civil Procedure 37(a)(5)(C).

The court has spent many hours reviewing Target's documents and found in many instances that Target's claim of privilege was not supported or was unfounded. The motion is, therefore, granted in part and denied in part as set out in the accompanying order describing the ruling on each document.

Plaintiffs' lawyer has labored long and hard to obtain the documents that Target has been improperly withholding. Plaintiffs' lawyer prepared for the court's convenience expanded privilege logs that included plaintiffs' analysis of each document. For almost every document, plaintiffs' analysis was far more comprehensive and careful than Target's.

The court concludes that this is an appropriate circumstance for the apportioning of expenses, including reasonable attorney's fees, in favor of plaintiffs. Accordingly, pursuant to Federal Rule

of Civil Procedure 37(a)(5)(C), Target is hereby ordered to file no later than March 30, 2012, a submission showing any reason why the court should not apportion two-thirds (66%) of plaintiffs' expenses (consisting of costs and reasonable attorneys' fees) incurred in connection with the motion to be paid by Target.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel the Production of Documents Being Withheld Under a Claim of Privilege [dkt 128] is granted in part and denied in part, and defendants Target Corporation, Target National Bank, and Target Receivables LLC are hereby ordered:

1. To produce to plaintiffs no later than March 23, 2012 all of the documents and previously redacted portions of documents that the court has determined not to be protected by privilege or work-product protection, as set out in the order setting out Rulings on Documents entered today; and

2. Target is hereby ordered to file no later than March 30, 2012, a submission showing any reason why the court should not apportion two-thirds (66%) of plaintiffs' expenses (consisting of costs and reasonable attorneys' fees) incurred in connection with the motion to be paid by Target.

**IS SO ORDERED.**

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: March 9, 2012

Appendix A



ACOSTA 03811